(58 App. Div. 575.)

## In re BRANDRETH'S ESTATE.

### LARKIN et al. v. TREASURER OF WESTCHESTER COUNTY et al.

(Supreme Court, Appellate Division, Second Department. March 8, 1901.)

TRANSFER TAX—GIFTS.

A father, contemplating marriage, transferred shares of stock in a corporation to his daughters, who executed an irrevocable power of attorney authorizing him to receive the dividends and vote the stock during his life. He retained no power over the corpus of the stock, and they exercised dominion over the certificates by transferring them to him and others as trustees by an agreement creating a voting trust. *Held*, that the transfer was complete and took effect in enjoyment when made, the ownership of the stock and the dividends being susceptible of division, and was not subject to tax under Transfer Tax Law (Laws 1896, c. 908) § 220, subd. 3, which imposes a tax on transfers of property made in contemplation of the death of the donor, or intended to take effect in possession or enjoyment at or after such death.

Hirschberg, J., dissenting.

Appeal from surrogate's court, Westchester county.

Proceedings against the estate of George A. Brandreth, deceased, under the transfer tax law. From a decree of the surrogate (59 N. Y. Supp. 1092) affirming a decree confirming the appraiser's report, Francis Larkin, Jr., and another, as executors, appeal. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Adrian H. Joline, for appellants.
Joseph W. Middlebrook, for respondents.

GOODRICH, P. J. This is an appeal from an order of the surrogate of Westchester county confirming the report of an appraiser appointed to determine the amount of tax to be imposed upon the transfer of property under the will of George A. Brandreth, who died in November, 1897, leaving, surviving him, a widow and four daughters, Mrs. Borup, Mrs. Larkin, Mrs. Kane, and Mrs. Potter. The will was admitted to probate in Westchester county, and letters testamentary were issued to Mr. Kane and Mr. Larkin. The appraiser reported that 11 shares of the capital stock of the Porous-Plaster Company of Sing Sing, of the par value of $5,000, were subject to a tax under the

tax law (chapter 908, Laws 1896). Section 220 provides for the imposition of a tax upon the transfer of certain property. Subdivision 3 reads:

"When the transfer is of property made by a resident, or by a nonresident when such nonresident's property is within this state, by deed, grant, bargain, sale, or gift made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect, in possession or enjoyment, at or after such death."

I quote from the opinion of the learned surrogate a statement of facts, as follows:

"The material facts are that George A. Brandreth, in his lifetime, and on or about the 2d day of January, 1893, transferred to his four daughters 11 shares of stock of the Porous-Plaster Company of Sing Sing, to wit: Three to Mary Watson Borup, three to Fanny R. Kane, three to Helen Ward Potter, and two to Eliza V. Larkin. The par value of this stock was $5,000 per share. At the time of the transfer the daughters executed a power of attorney to their father, which was irrevocable by its terms, and in which it is recited that the transfer is made upon condition that the said George A. Brandreth 'is to receive all dividends declared upon said stock for the term of his life, and also upon condition that he has the right to vote upon the stock the same as though no transfer had been made.' The Porous-Plaster Company were by said power of attorney directed to allow the said George A. Brandreth to vote upon the said eleven shares of stock the same as though no transfer had been made, and also authorized said company to pay the said George A. Brandreth all dividends which might be declared upon said stock, to make out the checks payable to his order, and to take his receipt for the same. The power of attorney also contained the provision: 'It being our intent and object to secure him the dividends on said stock until his death, and also the right to vote on said stock.' Subsequently, and on the 19th day of January, 1893, the said George A. Brandreth and his four daughters above named, together with Ralph Brandreth and Franklin Brandreth and others, entered into a trust agreement, wherein and whereby the stock of the Porous-Plaster Company was transferred to George A. Brandreth, Franklin Brandreth, and Ralph Brandreth, as trustees, the conceded object of which agreement was to prevent the control of the said corporation, or any interest therein, going outside of the Brandreth family. The stock of the company was transferred to the trustees, and the trustees issued certificates or receipts to the holders of the stock for the stock transferred to them, in which it was stated that it was to be held, used, managed, and controlled by the trustees pursuant to the trust agreement. The eleven shares of stock were issued by the company upon the transfer of George A. Brandreth, and the several new certificates were indorsed by the four daughters, but the certificates themselves never passed out of the possession of the corporation; that is to say, although the stock certificates were issued in the name of the persons named, and indorsed by them, the certificates were never detached from the stubs of the certificate book. George A. Brandreth, subsequent to the transfer to his daughters, and subsequent to the trust agreement, continued to receive the dividends upon the eleven shares of stock down to the time of his death."

Mr. Brandreth, the testator, was the owner, also, of one other share of stock, which he never transferred. This passed under the provisions of his will. This fact is material, as bearing upon his intention in transferring the other shares to his daughters. At the time of the transfer to his daughters, Brandreth was contemplating a marriage, which was subsequently consummated. Mr. Larkin testified as follows:

"The transfer of these eleven shares of stock of the Porous-Plaster Company to George A. Brandreth's four daughters was not made in anticipation of death, but was made in anticipation of a second marriage. Q. By that

statement I understand you to mean that this transfer was made for the purpose of avoiding any difficulty or eruptions between the new wife and his children when he came to die? A. And prior to that. Q. But, as shown by this power of attorney, it was intended that Mr. Brandreth should exercise the powers and functions given 'to him? A. To collect dividends during his life, as stated in the power of attorney."

There was no other evidence upon the subject, and I cannot agree with the paragraph in the opinion of the surrogate where he says that the transfer was made in contemplation of death, and not of the approaching second marriage. There is no evidence contradicting the testimony of Mr. Larkin.

The will was executed on October 30, 1897. It contained provisions which were material, as bearing upon the intention of the testator at the time of the transfer of the stock to his daughters. In it the testator says:

"Having already given to my wife, Annie Brandreth, and to my four children, Mary W. Borup, Eliza V. Larkin, Fanny R. Kane, and Helen Ward Potter, the greater part of my fortune, I do now make the following distribution of the remainder: * * * (3) I give, devise, and bequeath to my daughter, Eliza V. Larkin, and to her heirs, forever, my stock in the Porous-Plaster Company, of Sing Sing, N. Y."

The will contained no other reference to the Porous-Plaster stock, and the report of the appraiser states that the testator at no time owned more than 12 shares of that stock.

The error in the surrogate's decision arises from the fact that he fails to consider that capital stock in a company is susceptible of division into two parts. The first is the stock itself and its ownership. The second is the income or dividends arising from such ownership. A stockholder, while retaining the ownership of stock, may transfer the right to collect dividends to one person, and the stock itself, then or at a subsequent time, to another person, thus constituting one person the owner of the stock, burdened with the payment of the dividends thereon to another; and this is precisely what the transaction of January 2d effected. While I have not been able to find this precise point determined in any adjudicated case, there are several where the decision seems to proceed on the theory of divisibility as a matter not questionable. Harper v. Raymond, 3 Bosw. 29; Hill v. Newichawanick Co., 8 Hun, 459; Manning v. Mining Co., 24 Hun, 360; Brisbane v. Railroad Co., 25 Hun, 438; Boardman v. Railway Co., 84 N. Y. 157. It is matter of public notoriety that contracts for the sale of future dividends are frequent in the market. Mr. Dos Passos, in his treatise on Stockholders and Exchanges, says (page 654):

"Dividends are not an incident to stocks, so as to pass with them. They belong to the corporation, and are divided among the shareholders, and may be sold or assigned without parting with the stocks."

I am not unaware of the provision contained in section 54, c. 564, Laws 1890, entitled "An act in relation to stock corporations constituting chapter thirty-eight of the General Laws," which was in force at the time of the transfer to the daughters, and which provides that no vote shall be cast by proxy upon any stock not in possession or control of the person issuing the proxy, and that no proxy shall be valid after the expiration of 11 months from its date; but there is

an exception to this where the stockholder shall have specified therein some particular period during which it shall be in force. The question here, however, is not whether the proxy in this case was valid, so as to enable Mr. Brandreth to vote upon it at the meeting of the corporation, but only whether there was anything in the transaction of which it was a part to indicate the retention in him of any control over the corpus of the stock. Mr. Brandreth absolutely transferred the stock himself to his daughters, thereby placing it beyond his control. At the same time he reserved the right to vote upon the stock and receive the dividends during his lifetime. The transaction was completed by the surrender of his stock certificates and the execution of new ones to his daughters, notwithstanding the fact that such certificates remained in the stock book and in the possession of the officers of the company. The daughters could have sold the stock, subject to the right of their father to vote on it and to collect the dividends during his lifetime.

I am of the opinion, therefore, that the transfer of the stock was complete on the 2d of January. This view is emphasized by the fact that by an instrument, acknowledged on May 4, 1893, the owners of 39 of 52 shares of the capital stock of the company created what may be termed a "voting trust," wherein Mr. Brandreth and two others of his family were made trustees, to hold the stock, collect the dividends, and pay them to the stockholders, or those having the right to receive them. The four daughters were signers of this agreement, and it was stated in the body of the instrument that they were the holders of the number of shares set opposite their signatures, and opposite the signatures of the four daughters are the number of shares transferred to them by their father on the 2d of January. As Brandreth executed this agreement, he became trustee for his daughters, and would never have been permitted to dispute their ownership. The instrument is a clear confirmation of the transaction of January 2d, at which time the stock was finally transferred to the daughters, with the reservation as to voting and dividends already referred to.

The surrogate holds that the original condition of the gift was that the 11 shares of stock were to be enjoyed by the donees only after the death of the donor. This conclusion is not borne out by the evidence. The only right which the testator retained was the power of voting and of receiving dividends. The transfer of the stock itself was not affected by such retention.

In re Green's Estate, 153 N. Y. 223, 47 N. E. 292, the only case cited in the opinion of the learned surrogate, differs materially from the case at bar. In that case there was a transfer of stock to a trustee, to collect the income and apply it to the use of the testatrix during her lifetime, and after her death to divide it among her nieces; and power was reserved to modify the instrument, with the consent of the trustee, and to appoint a successor in case of his death; and power was given to the trustee to sell the stock and reinvest the proceeds, subject to the same uses and trust. The court said (pages 227, 228, 153 N. Y., and page 293, 47 N. E.):

"The real question is whether the remainders which the nieces took under the deed were intended to 'take effect, in possession or enjoyment,' at or after

the death of the donor. Until her death they had no actual possession, or right to the possession, of the property. Since they could not receive any part of the principal or the income till after her death, their right of enjoyment was postponed till the happening of that event. Whatever interest they may have had before, the right to the possession and enjoyment depended upon the death of the donor. We think it quite clear that the remainders were transferred to the nieces, in possession or enjoyment, by an instrument intended to take effect for that purpose, at or after the death of the donor; and so the case is brought within the terms of the statute. It matters not whether the transfer is by grant or by gift. So long as it was intended to take effect, in possession or enjoyment, at or after the death of the grantor or donor, the devolution of title is subject to the tax. The death of the donor was the event which made the transfer complete and effective, and secured to the nieces the possession and enjoyment of the property. In re Seaman's Estate, 147 N. Y. 77, 41 N. E. 401."

The counsel for the respondents cites In re Bostwick, 160 N. Y. 489, 55 N. E. 208, as authority for the position taken by the surrogate. In that case a trust deed was executed by Mr. Bostwick, transferring the property in trust for his three sisters during their lives, and providing in each case, upon the death of the beneficiary, for the future disposition of the trust fund; the donor retaining the right to divert the payment of the income to himself or other persons during his life, to withdraw the securities and substitute others in place thereof, and to alter or amend the same during his life by written notice to the trustees. In other words, he retained the power to revest himself with the ownership of the property. The court said (page 494, 160 N. Y., and page 210, 55 N. E.):

"If a person intends, in good faith, to make an absolute gift of his property during his life to others, and thereby make a provision for them which shall not be contingent as to its possession or enjoyment upon the event of his death, there is no inhibition in the act in that respect. The intent of the law is plain, and it is the duty of the courts to give that construction to its provisions which will effectuate the legislative purpose, while preserving in all its integrity the absolute right of every person to transfer his property during his lifetime, with such rights of enjoyment in the transferee as the donor can give."

In the case at bar the donor retained no power over the corpus of the stock, and the gift was final and irrevocable. The stock was transferred, not to a trustee for a specified purpose, but directly to the daughters. The certificates came into their possession, and they exercised dominion over them, indorsing them for the purposes already referred to. They could have sold the stock immediately. The donor had devested himself of it absolutely and irrevocably. I cannot agree, therefore, with the opinion of the learned surrogate that the enjoyment of the gift depended upon the death of the donor, as was the case in Re Green's Estate and Re Bostwick, supra. The gift was complete, and was not "made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect, in possession or enjoyment, at or after such death."

I have been led to express my views at some length for the reason, among others, that, as the third clause of the will, above quoted, bequeaths "my stock in the Porous-Plaster Company" to Mrs. Larkin, our decision might be cited as authority that the stock thus referred to was the 11 shares formerly held by the testator, instead of the 1 share which he retained.

The decree of the surrogate should be reversed, with costs payable out of the estate. All concur, except HIRSCHBERG, J., who dissents.