---

(66 App. Div. 162.)

## In re CORNELL'S ESTATE.

(Supreme Court, Appellate Division, Third Department. November 13, 1901.)

1. TAXABLE TRANSFER LAW—CONSTRUCTION—GIFT CAUSA MORTIS.

Under the tax law (Laws 1896, c. 908), providing that a tax shall be imposed on the transfer of property made in contemplation of death, or intended to take effect in possession or enjoyment at or after such death, the words "in contemplation of death" refer to a gift causa mortis, where no intention to evade the tax is shown.

2. SAME.

A testator devised all his property to his medical adviser and friend, who afterwards gave up his practice under a contract to become testator's private secretary and medical attendant at a specified salary. The contract provided the testator was to transfer to his medical adviser about $50,000 worth of securities, but the transfer was deferred to avoid the possible annoyance of publicity. Two years before his death the testator transferred the securities as provided by the agreement, and about 18 months later transferred other securities worth about $150,000, to avoid the complications that might arise on a threatened application for a committee of the person and estate of the testator. The transfers were made after consultation with a reputable attorney, and under contracts relating thereto the income of the securities was reserved to testator for his life. Held, that the gifts were not gifts causa mortis, so as to be liable to the transfer tax, under Laws 1896, c. 908, imposing a tax on the transfer of property made in contemplation of death.

3. SAME—GIFTS—WHEN VESTING.

The transfers vested the title to the bonds and stock in the grantee immediately, and hence were not subject to that clause of the statute imposing a tax on transfers intended to take effect in possession or enjoyment at or after death.

**4. SAME—RIGHT OF EXECUTOR TO APPEAL.**
> An executor, as such, is entitled to appeal from an order and decree fixing a transfer tax.

Appeal from order of surrogate, Ulster county.

Proceedings for appraisal of the estate of Charles W. Cornell, deceased, under the taxable transfer act. From an order and decree of the surrogate affirming an order fixing a tax thereon, Charles W. Crispell, individually and as executor, appeals; and from an order and decree reducing the interest on the tax so fixed the state comptroller and county treasurer of Ulster county appeal. Modified and affirmed.

Charles W. Cornell died on the 9th day of May, 1898, a resident of the county of Ulster, leaving a last will and testament in and by which he devised and bequeathed his entire estate to Charles W. Crispell, and made him the sole executor thereof. The will is dated June 1, 1894, and was admitted to probate on the 31st day of December, 1898. Thereafter a proceeding was instituted to appraise the estate of the decedent, pursuant to article 10 of the tax law, and an appraiser was duly appointed therefor. Testimony was taken before said appraiser by which it appears that on the 28th day of March, 1896, testator gave to Charles W. Crispell certain property, of the fair market value of $55,622.50, and also that said testator gave to the said Charles W. Crispell on the 3d day of December, 1897, property of the fair market value of $149,644.87. The fair market value of the property of said testator, exclusive of the gifts as stated, was found to be the sum of $18,415.30, and the appraiser also found that the executor's commissions, debts, funeral and testamentary expenses, would amount to $6,597.95. An order was made by the surrogate of Ulster county on the 15th day of January, 1900, approving and confirming the said report, and determining the cash value of the property subject to the tax to be $217,084.72, which includes the amount of said two gifts, and fixed the tax thereupon at $10,854.24. An appeal was taken by the said executor to the surrogate from said order, and an order and decree were made February 25, 1901, affirming the tax as fixed by the order of January 15, 1900, and directing that interest be collected thereon at 10 per cent. per annum from the death of said Cornell. Thereafter, on petition therefor, the surrogate amended the order and decree of February 25, 1901, by changing the interest to be paid on said tax from 10 per cent. to 6 per cent.

The testator was a bachelor, and at the time of his death was 65 years of age. In 1894 he inherited the property of which he was possessed. Soon thereafter he made the will which has since been admitted to probate. During all the times mentioned he had no business or occupation, and his health was such that he required medical attention from time to time. He was of a complaining disposition, and at times suffered severely from a swelling of the limbs, of a dropsical nature, and was depressed and unable to sleep. He suffered more in cold weather than at other times. He was worse in September, 1897, but improved thereafter, although he retained an attendant. At the time of making the gifts mentioned it does not appear that he was ill, other than as stated, and as he had been, with more or less change in severity, for several years prior thereto. He lived at a hotel, and after 1894 lived much the same as prior thereto, except that he went driving instead of walking. Charles W. Crispell was a practicing physician and surgeon of the city of Kingston, and testator employed him as secretary and medical adviser from 1894 until the time of his death, and Crispell was paid a salary therefor. He gave to Crispell a diamond ring and various presents, and on the 30th day of July, 1895, he gave him $15,000. The first gift in controversy, of March 28, 1896, consisted of bank and railroad stock and United States bonds of the par value of $40,230. A transfer of these shares and bonds was made by Cornell with the assistance of one Hume. The testimony of Hume in regard thereto was as follows: "Mr. Cornell said, if Dr. Crispell would come with him and would be his secretary, he would give him so much a

year, and transfer to him $40,000 to $50,000 in securities. He said that arrangement had been made, and the transfer was then being made to carry out that agreement. Mr. Cornell said that he had deferred making the transfer because of the annoyance which might grow out of the publicity of the transaction. After the papers were made out, and before they were signed, I asked Mr. Cornell to state what he understood the transaction to be, so that I would know he understood it in case the transfer was ever questioned; and I told him that after the papers were signed the principal and income would belong to Dr. Crispell, and he could dispose of it at any time he chose. He said: 'Yes, I know that; but I am to have the income of those securities as long as I live. The doctor and I have an understanding to that effect.' I said to him: 'You want to transfer these securities to the doctor as a gift absolute, not to be held in trust by him?' He said: 'Yes, that is my wish; but I am to have the income during my life.' After the transfer was made, Dr. Crispell came into the room, and I told him the conversation which had taken place, and the doctor then stated in the presence of Mr. Cornell and myself that that was the agreement." The securities were then delivered to and retained by Crispell. The testimony of the same witness with reference to the gift of December 3, 1897, is as follows: "This transfer was talked of in November or October preceding. And this transfer was brought about, as stated by Mr. Cornell, by a remark which had been made by Mr. ———, that a commission should be appointed for Mr. Cornell; that he was incompetent to manage his affairs. Mr. Cornell advised with me as to whether such a proceeding would be taken, and I told him I thought not, for the reason that he was fully competent to manage his own affairs. Mr. Cornell stated that, if any such steps were to be taken, he wanted Dr. Crispell protected, and wanted him to have his property after his [Cornell's] death. * * * Mr. Cornell stated to me that the reason which led up to the transfers was the remark made by Mr. ——— to which I have testified, and that he wanted Mr. Crispell protected." Prior thereto the securities to be transferred were brought from New York by a member of testator's banking firm, and thereafter, and on said 3d day of December, 1897, the same were severally transferred by unconditional written assignments, with blank powers of attorney. On the same day an agreement was entered into between Crispell, of the first part, and Cornell, of the second part, which recites: "Whereas, the said party of the second part has lately sold and transferred to the party of the first part certain securities, a schedule of which is hereto annexed, under the agreement and understanding that the party of the second part should during his life have all or such part of the net income of such securities as he might wish; and whereas, it is understood that the said party of the first part shall remain in the employ of the said party of the second part at a salary to be agreed upon between them." After these recitals the agreement provides that Crispell shall "keep a separate account of all interest, dividend, earnings, and profits collected, due, or received on the said securities, or in case of an exchange of any of such securities for other securities, or in case of a sale or payment of any such securities, then the proceeds of such payment or sale shall be invested in new securities, and all interest, dividends, earnings, and profits, whether growing out of or arising on such original or substituted securities, which may be collected, due, or received, shall enter into such separate account, and the said party of the first part shall out of the net proceeds of such securities pay himself such salary as may be agreed upon between the parties hereto, which shall not be less than five thousand dollars per annum, and the balance of such separate account shall be paid during the life of the said Charles W. Cornell to him, or to or for his benefit, and subjected to his disposal; but all of such separate account that may remain undisposed of by the said Charles W. Cornell at the time of his death shall remain the property of the said Charles W. Crispell. At the suggestion of the party of the first part, it is further agreed that the said Charles W. Cornell shall at any time during his life have the right to require the said party of the first part to turn over and transfer to Eleanor O. Smith, the half-sister of the party of the second part, securities to be selected by the party of the second part, but such securities shall not, in the aggregate, amount to more in face value than ten thousand dollars, and the

party of the first part shall make such transfer or transfers when requested so to do; and the party of the first part shall have the right at any time, at his own option, and upon his own suggestion, to transfer to Eleanor C. Smith such securities, not to exceed in the aggregate, in face value, the said sum of ten thousand dollars." All of the securities mentioned in the gifts, and each of them, were delivered to, and ever since have remained in the undisputed possession and control of, Crispell. Crispell carried out the agreements on his part, and remained in the employ of the said Cornell as his secretary and medical adviser, and paid over to or expended for him all of the income on such several securities, to the time of his death. No request was ever made to turn over any of the securities to said Eleanor C. Smith, and none of said securities were ever turned over to her.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

V. B. Van Wagonen, for Charles W. Crispell, executor.
Walter N. Gill, for comptroller and county treasurer.

CHASE, J. The statutes relating to a tax on the transfer of property in force prior to July 15, 1896 (chapter 399, Laws 1892), and at all times since (Tax Law; chapter 908, Laws 1896), provide that a tax shall be imposed upon the transfer of any property, real or personal, "when the transfer is of property made by a resident * * * by deed, grant, bargain, sale, or gift made in contemplation of the death of the grantor, vendor, or donor or intended to take effect in possession or enjoyment, at or after such death." They also provide that such tax shall be imposed "when any such person or corporation becomes beneficially entitled in possession or expectancy to any property or the income thereof by any such transfer whether made before or after the passage of this act." The last paragraph quoted is restricted to the case of grants or gifts causa mortis. In re Seaman's Estate, 147 N. Y. 69, 41 N. E. 401. Two questions require consideration: (1) Were the gifts made in contemplation of the death of Cornell? (2) Were they intended to take effect in possession or enjoyment at or after his death?

The right to impose the tax must rest upon evidence sufficient in probative force to bring it within the statute, and must establish a case from which the law clearly authorizes its imposition. In re Thorne's Estate, 44 App. Div. 8, 60 N. Y. Supp. 419. It is not claimed that the gifts to Crispell were made for the purpose of avoiding a tax on the transfer of the property. There is not a word of evidence tending to show a purpose to cheat or evade the law. The record before us shows that the first gift was to carry out an agreement between Cornell and Crispell that had theretofore been made by them, and which had not been consummated by reason of fear of the annoyance which might grow out of the publicity of the transaction. Before the second gift was made an application for a committee of the person and estate of Cornell, to be appointed by the court, had been threatened. Cornell and Crispell were then receiving whatever benefit there may have been to each in the contract by which Crispell was acting as the secretary and medical adviser of Cornell. Crispell was receiving from Cornell a salary of $5,000 per year. If Cornell's mental condition

should become such that a committee of his person and estate would be appointed by the court on application therefor, such committee would take charge of the property of Cornell that by will long since executed was given to Crispell, and also of the person of Cornell, to the possible exclusion of Crispell. To avoid so far as possible the consequences of such a proceeding is the reason assigned for the second gift. It is not for us to imagine an ulterior or different purpose than that stated in the record. As far as appears, Cornell did not apprehend any immediate danger of death, nor does there appear to have been any such immediate danger. We cannot say that the subject of his death at even a remote period of time was considered by him, except that the disposition of the property by gift was to the same person whom he desired should have such property after his death. If he was about to die, then there was no necessity for the gift, as the property would pass under his will. His probable death before many years was not the motive for the gift, but, rather, his probable continuance of life for several years.

If a transfer of property is made for the purpose of cheating the law and avoiding payment of the transfer tax, it may well be that a gift so made, although absolute and unconditional, is made in contemplation of death, and that a tax should be paid thereon, although the grantor, vendor, or donor may live for many years thereafter; but, with such exception, the rule fairly to be deduced from all the authorities is that the words "in contemplation of death" refer to a gift causa mortis. In re Seaman's Estate, 147 N. Y. 69, 41 N. E. 401; In re Crary, 31 Misc. Rep. 72, 64 N. Y. Supp. 566; In re Masury's Estate, 28 App. Div. 580, 51 N. Y. Supp. 331; In re Edgerton's Estate, 35 App. Div. 125, 54 N. Y. Supp. 700; In re Spaulding's Estate, 49 App. Div. 541, 63 N. Y. Supp. 694. To sustain a gift causa mortis, it must be made under apprehension of death from some present disease or other impending peril, and it becomes void by a recovery from the disease or escape from the peril. It is also revocable at any time by the donor, and becomes void by the death of the donee in the lifetime of the donor. Ridden v. Thrall, 125 N. Y. 572, 26 N. E. 627, 11 L. R. A. 684, 21 Am. St. Rep. 758. The gift to Crispell was not a gift causa mortis, and it was not made to avoid the payment of the transfer tax. The tax is on the devolution of property. It is the right of succession of property, and not the property itself, that is taxed. In re Dows' Estate, 167 N. Y. 227, 60 N. E. 439, 52 L. R. A. 433. The legal title to the stocks and bonds included in each gift at once vested in Crispell. There was no possible contingency or circumstance that could affect such title. The intention of Cornell to transfer to Crispell the principal and the income of the bonds and stocks included in the first gift absolutely was expressly stated by him at the time of the transfer. If Crispell had failed to keep his agreement in regard to paying the income to Cornell, he would have subjected himself to an action to enforce the agreement. In re Thorne's Estate, 44 App. Div. 8, 60 N. Y. Supp. 419. The agreement made contemporaneously with the second gift contemplates that Crispell has the absolute ownership of the bonds and stocks, with power to

collect, exchange, and sell them at pleasure. It is not necessary to speculate as to what relief Cornell could have obtained in equity in case of default by Crispell in carrying out the written agreement. All of the property transferred was susceptible of consideration and ownership apart from the income thereon. In re Brandreth's Estate, 58 App. Div. 575, 69 N. Y. Supp. 142. Assume that Cornell intended to reserve to himself the dividends or interest declared or paid upon the identical bonds or stocks transferred; such reservation of income would not prevent the title to the bonds and stocks themselves passing to Crispell, if that was the intention of the parties. Contracts for the sale of bonds and stock, less dividends or interest, are not uncommon. We are not aware of any legal or other reason why such a sale cannot be made. The gift of the bonds and stock to Crispell being absolute, they became his property, subject to his debts, and transferable as any other property. The devolution of the title to the bonds and stock was at the date of the gifts, respectively. They then ceased to be the property of Cornell, and became the property of Crispell. Confessedly, Crispell had the possession of the bonds and stock after the gifts, respectively. He had also all the enjoyment of them that it was possible for the donor to give as apart from the income. Such right of enjoyment as it is possible to give is all that is required. In re Bostwick, 160 N. Y. 489, 55 N. E. 208. There was nothing to prevent Crispell selling his interest in the bonds and stock, and enjoying the proceeds of the sale. Deposit Co. v Price, 87 N. Y. 542.

The cases cited by the respondent where the tax has been upheld are all clearly distinguishable from this case. In Re Green's Estate, 153 N. Y. 223, 47 N. E. 292, the fund was transferred to a trustee, reserving the right to the grantor to modify the instrument at any time with the consent of the trustee, and to appoint a successor in case of his death. The grantor reserved the income, but directed the trustee at her death to divide and pay over the fund to three nieces, and also made further provision in case of the death of either of these nieces. The nieces never had the possession or enjoyment of the fund, and clearly took but a remainder, and that subject to the instrument being changed to their entire exclusion. In Re Masury's Estate, 28 App. Div. 580, 51 N. Y. Supp. 331, the trust of March 10, 1890, gave the fund to a trustee, and, like the other trusts therein mentioned, was subject to revocation by the grantor; and in this particular trust the income was reserved to the grantor during life, and after his death the beneficiary, John M. Masury, received a life estate only. He was never to have title to the securities themselves, and clearly did not, under the trust instrument, have the possession or enjoyment of the income until after the death of the grantor. In Re Ogsbury, 7 App. Div. 71, 39 N. Y. Supp. 978, testator executed to a trust company an indenture granting and selling to it certain securities upon trust to receive the income and pay the amount thereof to him during his life, and upon his death to assign the same to such persons as the testator should by his last will, or instrument in the nature thereof,

appoint, and in default thereof to his next of kin. Held to have been a mere naked trust, in which no third party had an interest, and that the testator could at any time have revoked the trust if he had desired to do so.

The executor, as such, is entitled to appeal from an order and decree fixing a transfer tax. He is made personally liable for the tax (Tax Law; chapter 908, Laws 1896, § 222), and is a party aggrieved, within the meaning of the provisions of the Code of Civil Procedure relating to appeals.

The order modifying the rate of interest to be paid on the tax should not be disturbed. Order and decree of the surrogate modified by reducing the tax to $590.86, and as so modified affirmed, with costs to the executor. All concur.