[No. 2309]

NELLIE MILLER NICKEL AND J. LEROY NICKEL, AS TRUSTEES UNDER THAT CERTAIN DEED OF TRUST DATED APRIL 17, 1913, MADE, EXECUTED AND DELIVERED BY HENRY MILLER TO NELLIE MILLER NICKEL AND J. LEROY NICKEL, AS TRUSTEES, AND RECORDED IN BOOK 972 OF DEEDS (N.S.), PAGE 170, IN THE COUNTY RECORDER'S OFFICE OF THE CITY AND COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA, APPELLANTS, v. THE STATE OF NEVADA, RESPONDENT.

[No. 2310]

GEORGE A. COLE, AS STATE CONTROLLER OF THE STATE OF NEVADA, RESPONDENT, v. J. LEROY NICKEL AND NELLIE MILLER NICKEL, AS TRUSTEES, ETC., ET AL., APPELLANTS.

[177 Pac. 409; 185 Pac. 565]

1. TAXATION—TRANSFER TAX—CONSTRUCTION OF DEED OF TRUST.
    In determining whether a deed of trust immediately vested legal title so as to exempt transfer from a transfer tax under inheritance-tax law, the deed will be construed, together with a will executed simultaneously therewith as a single instrument.

2. TAXATION—TRANSFER TAX—DEED OF TRUST—CONSTRUCTION.
    Deed of trust by 86-year-old invalid after enactment of inheritance-tax law, but shortly before law took effect, transferring stock to trustees with directions to pay income to grantor during his life, with directions as to disposition of property after his death, corresponding to provisions of will executed simultaneously with deed, was intended as disposition of property to take effect at or after grantor's death, within inheritance-tax law.

3. TAXATION—TRANSFER TAX—DEED OF TRUST—WEIGHT OF EVIDENCE.

Where, immediately after execution of the will, testator executed deed of trust directing trustees to pay testator income during his natural life and directed disposal of property following his death by provisions corresponding to those in will, evidence that execution of deed was an afterthought to avoid, if possible, an expected increase in the tax rate in California and a probable inheritance tax of federal government, is entitled to weight in action to impose a transfer tax under inheritance-tax law.

4. TRUSTS—REVOCABILITY.

It is only in cases where other parties besides the person creating the trust have an interest therein that the trust becomes irrevocable.

5. TRUSTS—REVOCABILITY—DEED OF TRUST.

Deed of trust transferring stock to trustees, with direction to pay income to grantor during his life and directing disposition after death in manner corresponding to will executed simultaneously, beneficiaries receiving no present interest, grantor could revoke deed of trust.

6. DEEDS—VALIDITY—EFFECT UPON EXECUTION.

A deed to be valid should take effect in interest upon its execution, though the right of possession or enjoyment may not take place until the happening of a certain event.

7. WILLS—DEED OR WILL—FUTURE INTERESTS.

Where interests created do not arise until death of donor or some other future time, the instrument cannot be a deed, although so denominated and accompanied by words of immediate grant, a sufficient consideration, and formal delivery.

8. DEEDS—ESTATES WHICH MAY BE CREATED.

There is no natural right to create artificial and technical estates with limitations over, nor has the remainderman any more right to succeed to the possession of property under such deeds than legatees or devisees under a will.

9. DEEDS—CONSTRUCTION—FEE.

It is the policy of the law to encourage making conveyances in fee.

10. DEEDS—LEGALITY.

It is as lawful to create an estate for life with remainder after death of the grantor as it is to convey in fee.

11. TAXATION—"TRANSFER TAX"—NATURE.

The "transfer tax," imposed by inheritance-tax law, is in the nature of an excise tax, to wit, on the transfer of property.

12. TAXATION—TRANSFER TAX—RIGHTS AND OBLIGATIONS.

The rights and obligations of all parties in regard to payment of inheritance tax under inheritance-tax law are determinable as of the time of the death of the decedent.

13. TAXATION—INHERITANCE TAX—STATUTE—OPERATION.
Transfer of stock by deed of trust intended to take effect in possession or enjoyment at or after grantor's death was taxable under the inheritance-tax law, although such law had not taken effect at time of execution of deed; the property having vested at time of death and not at the date of the execution of the deed. ·

ON REHEARING

1. TAXATION—TRANSFER TAX NOT INTERFERENCE WITH COMITY BETWEEN STATES.
Where the devolution of title to property involves a succession or inheritance tax, it is governed and controlled by the laws of the forum imposing the tax, if the transfer sought to be taxed is within the jurisdiction of the tax authorities, and imposition of such tax cannot be denied, on the ground that it would interfere with comity between states, for it is a well-settled rule that no foreign law will be enforced in a sovereign state, if to enforce it will contravene the express statute law or expressed public policy of the forum or is injurious to its interests.

2. TAXATION—TAX ON TRANSFER IN CONTEMPLATION OF DEATH.
Whether a transfer by way of trust is one intended to take effect at or after the grantor's death does not depend on whether the trust is revocable, but the test is whether the property passes with all attributes of ownership, independently of the death of the transferor.

APPEAL from Second Judicial District Court, Washoe County; R. C. Stoddard, Judge.

Proceeding by George A. Cole, as Controller of the State of Nevada, against J. Leroy Nickel and another, trustees, and others. From an order and judgment assessing a transfer tax against property involved and from an order denying and overruling motion for new trial, defendants appeal. Affirmed, COLEMAN, J., dissenting.

On rehearing, affirmed, COLEMAN, J., dissenting.

On writ of error to United States Supreme Court.

Cheney, Downer, Price & Hawkins and Edward F. Treadwell, for Appellants:

The estates created by the deed and transfer vested before the act in question became effective. The transfer made by the deed of trust dated April 17, 1913,

created vested estates in the beneficiaries and in the remaindermen; no power of revocation being reserved, such estates were not subject to be defeated by any act of the grantor, and they vested at the date of the transfer, and not at the date of the death of the grantor. Nichols v. Emery, 109 Cal. 323; Tennant v. Tennant Memorial Home, 167 Cal. 570. No power of revocation was reserved in the deed of trust. Gray v. Union Trust Co., 171 Cal. 637. Future estates, conditional estates, and contingent estates are as much vested property rights as are present, absolute, unconditional estates, and are as much entitled to protection under the constitution. "An estate is vested when there is an immediate right of present enjoyment or a fixed right of future enjoyment." Estate of Stanford, 126 Cal. 122.

The inheritance-tax act by its terms does not apply to any transfer made before it became effective. It is presumed to be prospective, and to apply only to future transactions; not retroactive or applicable to past transactions, in the absence of an express provision to the contrary. 36 Cyc. L. & P., pp. 1205–1208; Milliken v. Sloat, 1 Nev. 573; Hunter v. Savage Mining Co., 4 Nev. 153; State v. Manhattan-Verde, 32 Nev. 474; State v. Eggers, 33 Nev. 535; United States v. Heth, 7 U. S. 399; Chew Heong v. United States, 112 U. S. 536. "It is hardly necessary to say that such statutes are exceptions to the almost universal rule that all statutes are addressed to the future and not to the past. They usually constitute a new factor in the affairs and relations of men, and should not be held to affect what has happened unless, indeed, explicit words be used, or by clear implication that construction be required." Winfree v. Northern P. R. Co., 227 U. S. 296, 57 L. Ed. 518; Ogden v. Blackledge, 2 Cranch, 272; Surgett v. Lapice, 8 How. 48; Murray v. Gibson, 56 U. S. 421; White v. United States, 191 U. S. 545; United States v. American Sugar Refining Co., 202 U. S. 563; United States Fidelity Co. v. Struthers

Wells Co., 209 U. S. 306; United States v. Schofield Co., 182 Fed. 240. "Laws which create new obligations, or impose new duties, or exact new penalties because of past transactions, have been universally reprobated by civil- and common-law writers, and it is to be presumed that no statute is intended to have such effect unless the contrary clearly appears. This is especially so where to give the statute retrospective effect would work manifest injustice." Pignaz v. Burnett, 119 Cal. 157. "Retroaction is never allowed to a statute unless required by express legislative mandate or unavoidable implication." Vanderbilt v. All Persons, 163 Cal. 507; Gates v. Salmon, 28 Cal. 320; Estate of Richmond, 9 Cal. App. 402; People v. Nash, 15 Cal. App. 320; Craycroft v. Superior Court, 18 Cal. App. 781; State Commission v. Welch, 20 Cal. App. 624; Ferlage v. Supreme Tribe, 153 Ky. 645; Heiskell v. Lowe, 153 S. W. 284; Walton v. Woodward, 73. Kan. 238; Denny v. Bean, 51 Or. 180; Casey v. Bingham, 37 Okl. 484; In Re Lamprecht, 137 Mich. 450; Brown v. Hughes, 89 Minn. 150; Harrelson v. W. U. T. Co., 90 S. C. 132; Thomas v. Higgs, 68 W. Va. 152.

The act could not constitutionally be made applicable to the transfer in question. Laws imposing inheritance taxes are to be strictly construed against the state. "In accordance with the well-settled rules of construction, statutes of this character cannot be so construed as to extend their meaning beyond the clear import of the words used." United States v. Watts, 1 Bond, 580, Fed. Cas. 16,653; Fox's Administrators v. Commonwealth, 16 Gratt. 1. "But a law imposing taxes will be construed in favor of the subject and against the sovereign." In Re Cullen's Estate, 21 Atl. 781; In Re Feyerweather, 143 N. Y. 119; In Re Vassar's Estate, 127 N. Y. 12; In Re Enston's Estate, 113 N. Y. 178. "It is an old and familiar rule of the English courts, applicable to all forms of taxation, and particularly special taxes, that the sovereign is bound to express its intention to tax in clear and unambiguous language,

and that a liberal construction be given to words of exception confining the operation of duty." Eidman v. Martinez, 46 L. Ed. 697; Disston v. McClain, 147 Fed. 114; Lynch v. Union Trust Co., 164 Fed. 161; People v. Koenig, 37 Colo. 283; Re Harbeck's Will, 161 N. Y. 211; Bailey v. Henry, 143 S. W. 1124; In Re Durfee's Estate, 140 N. Y. Supp. 594; In Re Terry's Estate, 112 N. E. 931.

Laws imposing inheritance taxes are universally held not to be deemed retroactive or to impose a tax on rights which have accrued prior to the passage of such laws. Howe v. Howe, 179 Mass. 546; Carter v. Whitcomb, 74 N. H. 482; Eury's Exrs. v. State, 74 N. E. 650; In Re Forsythe's Estate, 32 N. Y. Supp. 175; Gilbertson v. Ballard, 125 Iowa, 420; Re Hendrick's Estate, 3 N. Y. Supp. 281; Morrow v. Depper, 133 N. W. 729; Lacey v. State Treasurer, 132 N. W. 843; Warrimer v. People, 6 Dem. Sur. 211; In Re Miller, 18 N. E. 139; In Re Appeal of Lambard, 34 Atl. 530; Commonwealth v. Wellford, 76 S. E. 917. "Ordinarily statutes will not be given a retrospective effect unless there is no other reasonable interpretation to be placed upon their language." People v. Carpenter, 106 N. E. 302; Commonwealth v. McCauley's Exr., 179 S. W. 41; In Re Haight's Estate, 136 N. Y. Supp. 557; McLain v. Penn Co., 108 Fed. 618; Keeney v. New York, 222 U. S. 525.

Taxes on transfers made in contemplation of death, or intended to take effect in possession or enjoyment after death, have always been held to be governed by the law in force at the time of the transfer, and not by the law in force at the time of death, and not to be subject to inheritance-tax laws passed after such transfers. Gilbertson v. Ballard, 125 Iowa, 420; Re Hendrick's Estate, 3 N. Y. Supp. 281; Morrow v. Depper, 133 N. W. 729; Lacey v. State Treasurer, 132 N. W. 843; Commonwealth v. McCauley's Exr., 179 S. W. 41; In Re Haight's Estate, 136 N. Y. Supp. 557; In Re Webber, 136 N. Y. Supp. 83; Polhemus's Estate, 145

N. Y. Supp. 1107; Haley's Estate, 152 N. Y. Supp. 732; In Re Keeney, 194 N. Y. 281; Matter of Thompson, 87 Misc. Rep. 539; Matter of Valentine, 91 Misc. Rep. 203. "But the statute does not impose a tax on the property, but on the transfer. The validity of that burden must be determined by the situation as it existed when the deed was made." Keeney v. Comptroller, 56 L. Ed. 299; In Re Hodge's Estate, 215 N. Y. 447; People v. Carpenter, 106 N. E. 302; People v. Griffith, 245 Ill. 532; People v. Union Trust Co., 255 Ill. 168; Ormsby County v. Kearney, 37 Nev. 314; Cowlick v. Shingle, 5 Wyo. 87; Laporte v. Gamewell Tel. Co., 146 Ind. 466.

If the inheritance-tax act be construed to impose a tax on the interests, estates, and property rights which passed by the deed and vested before its passage, it is unconstitutional, being in violation of the Fourteenth Amendment to the Constitution of the United States, section 10 of article 1 of said constitution, section 8 of article 1, section 15 of article 5, and section 1 of article 10 of the Constitution of the State of Nevada. "Legislation which impairs the value of a vested estate is unconstitutional." Re Pell, 171 N. Y. 48; Matter of Lansing, 182 N. Y. 238; Matter of Vanderbilt, 172 N. Y. 69. "That law [inheritance-tax law] is prospective in its operation, and it is beyond the power of the state, even if it so desired, to subject to its operation property which the owner in good faith disposed of before his death." State v. Probate Court, 104 Minn. 268, 113 N. W. 888; Lacey v. State Treasurer, 132 N. W. 843; Pullen v. Wake Co., 66 N. C. 361; In Re Meyer, 83 N. Y. App. Div. 381; In Re Smith, 135 N. Y. Supp. 240; Matter of Craig, 89 N. Y. Supp. 972; Matter of Chapman, 117 N. Y. Supp. 679; Commonwealth v. Wellford, 76 S. E. 917; In Re Haggerty, 112 N. Y. Supp. 1017. "It is immaterial, so far as the question we discussed is concerned, that it is alleged that the transfer was made 'in contemplation of his death and without valuable consideration.' The estate conveyed fully vested at the time of the delivery of the deed in escrow, entirely regardless of the motives of the grantor for

the conveyance, and without regard to whether the transfer was without valuable consideration, and there was then no law imposing a tax on any such transfer." Hunt v. Wicht, 162 Pac. 639.

The mere fact that a deed executed before the date upon which the inheritance-tax law became effective is made in contemplation of death, or intended to take effect in possession and enjoyment after death, does not make it taxable. Re Hendrick's Estate, 3 N. Y. Supp. 281; Morrow v. Depper, 133 N. W. 729; Lacey v. State Treasurer, 132 N. W. 843; Commonwealth v. McCauley's Executors, 179 S. W. 41; In Re Haight's Estate, 136 N. Y. Supp. 557; Gilbertson v. Ballard, 125 Iowa, 420; In Re Webber, 136 N. Y. Supp. 83; Polhemus's Estate, 145 N. Y. Supp. 1107; Haley's Estate, 152 N. Y. Supp. 732; State v. Probate Court, 102 Minn. 268; In Re Slosson's Estate, 216 N. Y. 79. The mere fact that a deed was made before the date upon which an inheritance-tax law goes into effect was made with the intention of avoiding the tax, does not make it taxable. State v. Probate Court, 102 Minn. 268. The fact that a deed executed before the date upon which an inheritance-tax law goes into effect created estates which are technically contingent, and do not become vested until after the death of the grantor and after the act became effective, does not make them taxable. Matter of Lansing, 182 N. Y. 238; Matter of Vanderbilt, 172 N. Y. 69; Lacey v. State Treasurer, 132 N. W. 843; In Re Smith, 135 N. Y. Supp. 24; Matter of Craig, 89 N. Y. Supp. 972. The mere fact that the beneficiaries do not come into the actual possession of the property until after the inheritance tax goes into effect, does not make it taxable. Matter of Valentine, 91 Misc. Rep. 203; Commonwealth v. Wellford, 76 S. E. 911.

*Geo. B. Thatcher,* Attorney-General, and *William McKnight,* Deputy Attorney-General, for Respondent:

It is not necessary that the inheritance-tax statute operate retrospectively in order to tax the transfers

herein involved. The tax became due on the date of death, and on that day the right of the state to receive the tax became fixed and vested. Appeal of Lambard, 88 Me. 587. "But the occasion for the tax being the devolution of the property, it ought to attach to such interests only as arise by reason of a death subsequent to the act." Eury's Exrs. v. State, 74 N. Y. 650.

The transfers were intended to and did take effect in possession only upon the death of the testator. The property did not vest in possession or enjoyment until after such death. In Re Masury's Estate, 51 N. Y. Supp. 331; In Re Ogsbury's Estate, 39 N. Y. Supp. 978; Barbey's Estate, 114 N. Y. Supp. 725; Patterson's Estate, 127 N. Y. Supp. 284; Seaman's Estate, 147 N. Y. 69; Green's Estate, 153 N. Y. 223; Bostwick's Estate, 160 N. Y. 489; In Re Douglas County, 84 Neb. 506; Appeal of Bibert, 110 Pa. 329; Crocker v. Shaw, 174 Mass. 266; New England Trust Co. v. Abbott, 91 N. E. 379; State v. Bullen, 143 Wis. 512. "We are equally clear in the conclusion that the trust deed * * * did not vest the beneficiary with any rights of property until the death of the grantor, and that it comes within the provisions of the statute, and is subject to the tax ordered to be collected by the order of the surrogate." In Re Masbury's Estate, supra.

When the possession and enjoyment are postponed during the life of the grantor, that fact subjects the property to payment of the inheritance tax. In Re Moir's Estate, 69 N. E. 905; Reisch v. Commonwealth, 106 Pa. St. 521. The beneficiaries under the deed of trust must trace their succession through the will, and the rights of the parties are determined by the law as it stood at the date of death. In Re Douglas County, supra; In Re Ogsbury's Estate, supra; In Re Brandreth, 169 N. Y. 437; In Re Hart's Estate, 169 N. Y. 716. Whether a deed is made in contemplation of death, is a question of fact on which the finding of the trial court is final. Blackmore & Bancroft, Inheritance

Taxes, sec. 114.  The trial court found that the trust deed was made in contemplation of death, and appellants concede that, "if this act had been in force at the time of the transfer, the same might be held to be in contemplation of death." This, in itself, is sufficient to authorize the tax in question. People v. Carpenter, 264 Ill. 400.

The fact that the trust deed and the will were executed on the same day, makes them a single transaction, entered into for the purpose of evading the inheritance tax, and brings the transfer squarely within the law as taking effect after the death of the grantor. In Re Dobson, 132 N. Y. 472; People v. Moir, 207 Ill. 180; Reisch v. Commonwealth, 106 Pa. 521; Conwell's Estate, 5 Pa. Co. Ct. 368. The deed was not recorded until after the death of the grantor. This fact makes the statute applicable. In Re Shearer, 73 N. Y. Supp. 1057.

The test by which the exemption is to be ascertained is not ,whether a power to revoke was or was not inserted in the trust deed, but upon the passing of the property, with all the attributes of ownership, independently of the death of the grantor. State Street Trust Co. v. Stevens, 95 N. E. 851. A tax on a passing by will is imposed at the date of death, and there is certainly no difference in principle between property passing by deed intended to take effect in possession and enjoyment on the death of the grantor and property passing by will. Crocker v. Shaw, 174 Mass. 245; N. E. Trust Co. v. Abbott, 205 Mass. 279; In Re Line's Estate, 155 Pa. St. 378.

If the inheritance-tax act be construed as imposing a tax on the transfers involved, the same is not unconstitutional nor in violation of any constitutional provision. State ex rel. Gelsthrope v. Turnell, 20 Mont. 219; Stevens v. Brodford, 185 Mass. 439; Attorney-General v. Stone, 209 Mass. 186; Carpenter v. State, 17 How. 456; Attorney-General v. Middleton, 3 Hurl. & N. 125;

In Re Short's Estate, 16 Pa. St. 66; Commonwealth v. Smith, 5 Pa. St. 143; State v. Mollier, 96 Ky. 514.

Since the tax is imposed upon the privilege of receiving or taking property, and not upon the property itself (33 L. R. A. 606), and since the privilege is itself not a natural right, but a creature of law, it follows as a corollary that, except in so far as it is clearly restricted by the constitution, the legislature may impose such burdens upon it as it may see fit. In Re Tuohy's Estate, 90 Pac. 170.

The naked legal title, which is all that passed by the trust deed, is not a vested interest in the sense of a property right which the courts will protect from retroactive legislation. Diamond State I. Co. v. Husbands, 8 Del. Ch. 205. So long as anything remains to be done to complete the transfer, the tax may be imposed, for until then the transfer is not complete. Estates do not vest in the sense of being exempt from an inheritance tax until the time for the vesting occurs. The tax, being based upon the right to receive, may be imposed, and by the Nevada statute is imposed, on all transfers which were not fully completed in possession and enjoyment at the time the act went into effect. Chandler v. Kelsey, 205 U. S. 466; Magoun v. Bank, 170 U. S. 283; Plumber v. Coler, 178 U. S. 115; Runnemarcher v. State, 129 Wis. 190; Westhus v. Union I. Co., 164 Fed. 795; Mertz v. Woodman, 218 U. S. 205; New England Trust Co. v. Abbott, 91 N. E. 379; Minot v. Stevens, 93 N. E. 973.

By the Court, SANDERS, J.:

This was a statutory proceeding brought by Cole as Controller of the State of Nevada, against the appellants under our so-called inheritance-tax law (Stats. 1913, p. 411). The appeal is prosecuted to review an order and judgment assessing and adjudging a transfer tax against the property involved for the sum of $48,149.78, and from an order denying and overruling the appellants' motion for a new trial.

The facts of the case are as follows: On March 26, 1913, the inheritance-tax law was approved, but by the terms of section 31 of the act it did not take effect until thirty days thereafter, or April 25, 1913 (Stats. 1913, pp. 411–422). Prior to April 17, 1913, Henry Miller, deceased, a resident of San Francisco, Cal., was the owner of 119,875.75 shares of stock in Miller & Lux, Incorporated, a Nevada corporation. This corporation owned all of the capital stock of the Pacific Live Stock Company, a California corporation. The latter corporation owned a large amount of real estate and personal property in Nevada, appraised at $1,431,326.86. To the extent that this stock represented the property situated in Nevada, it is taxable under section 1 of the act, which provides:

"For the purposes of this act, the ownership of shares of stock in a corporation owning property in this state shall be considered as the ownership of such interest in the property so owned by such corporation, as the number of shares so owned shall bear to the entire issued and outstanding capital stock of such corporation."

This proposition is not disputed by appellants if the property is otherwise subject to the act.

On April 17, 1913, after the enactment and adoption of the act in question, and eight days before it became effective, Henry Miller, having prior thereto made other wills, published and declared his last will and testament, nominating therein Nellie Miller Nickel, J. Leroy Nickel, and F. B. Anderson as executors thereof without bonds. Immediately after the publication and declaration of his will, Henry Miller executed and delivered to Nellie Miller Nickel and J. Leroy Nickel a deed of trust, by which all of the said stock was transferred to said trustees upon certain trusts. On the same date the trustees accepted the trust in writing. On the same date the stock was transferred on the books of the corporation to the trustees. The deed of trust and stock were thereafter kept in the exclusive custody of the trustees.

At the time of the execution of the will and deed, Henry Miller was 86 years of age, was an invalid under medical care and treatment, and afflicted with physical ailments from which he never recovered, and on October 14, 1916, he died. On June 4, 1913, Henry Miller published and declared a codicil to his last will and testament, whereby the said Anderson was relieved of his trust as executor; he having theretofore expressed his desire to decline the trust. The deed contains substantially the same trusts as the will, and directs the trustees to pay the beneficiaries the amounts therein specified, which are the same as named in the will, and on the same conditions and limitations. The stock was, by the deed of trust, transferred to the trustees:

"To have and to hold the same as such trustees upon the following uses and trusts and for the following uses and purposes, that is to say:

"I. During the lifetime of the said party of the first part the said trustees shall receive the rents, issues and profits of said property and pay the same to the party of the first part, during the term of his natural life.

"II. (1) Upon and after the death of the said party of the first part the said trustees shall take and hold all of said property, and shall convert sufficient thereof into cash to pay the several amounts hereby directed to be paid, and shall collect the rents, issues and profits thereof, and therefrom shall be by them applied in the manner hereinafter set forth:

"(2) From the proceeds of the sale of said property said trustees shall pay the following sums: [Then follows list of persons and amounts to be paid to them. Some of these payments are to be made monthly and shall not extend beyond the lives of designated parties and 'their children living at the time of the death of the party of the first part.' It also provides that upon the death of certain of said parties before receiving said sums, the share of such deceased person shall go to others.]

"(o) They shall pay to the following-named employees of said party of the first part and Miller & Lux, Incorporated, the following sums as soon after the death of said party of the first part as possible: [Then follows list of such employees with the amounts to be paid to each.]

"If any of the above-named persons be not employed by said party of the first part or Miller & Lux, Incorporated, at the time of the death of said party of the first part, the provisions by this subdivision made for him shall lapse. [Then follows list of other beneficiaries, with the amounts to be paid to each, followed by the provisions that all of the income from the said property, except the income from certain specified bequests, 'from the time of the death of said party of the first part shall be paid to the daughter of said party of the first part, etc.']

"III. Nothing herein shall be construed to restrain the free alienation of any of said property and said trustees may sell any of said property at public or private sale, with or without notice, and on such terms as they may see fit. Whenever said trustees are authorized to invest any of said property, they shall invest the same only in real estate, mortgages on real estate, bonds of the United States, or of some county or municipal corporation within the United States, or stock or bonds of the corporations Miller & Lux, Incorporated, Pacific Live Stock Company, or the San Joaquin & Kings River Canal & Irrigation Company, Incorporated. All of the sums directed to be paid by the second (II) paragraph of this deed shall be paid as soon as sufficient money may be realized from the sale of the said property without injury thereto, and the same shall be paid as soon as in the judgment of said trustees it can be done without loss, but not later than ten (10) years after the death of said party of the first part and during the lives of the descendants of said party of the first part living at the time of his death, and said trustees may pay the

same in such amounts and at such times as may be most beneficial, and none of said amounts shall bear interest; provided, that at least one hundred and fifty ($150) dollars a month shall be paid on account of the provision for the daughter-in-law of said party of the first part, Sarah E. Miller, from the time of the death of said party of the first part. Nothing herein shall be construed to required or permit the accumulation of the income of said property, but the entire income of said property shall at all times be applied to the purposes herein set forth. If any person to whom any sum of money is directed to be paid dies before the death of said party of the first part, such provision shall lapse except as otherwise provided herein. If any of the sums directed by this deed to be paid to or set aside for the benefit of the persons named herein shall be paid or set aside in whole or in part by any trustees named in the last will and testament of said party of the first part from any estate coming into their possession under said will, such payment shall be deemed to be in satisfaction of the provision herein made for such party, and also in satisfaction of the provision in such will made for such party, in whole or in part, as the case may be, and the parties of the second part shall hold and dispose of the property conveyed hereby upon the remaining trusts designated herein."

It appears that Henry Miller once expressed a desire to change one of the legacies specified in the trust deed, but he was advised by his counsel that it was not possible for him to do so "as no power of revocation had been reserved in the deed."

It is the contention of the State of Nevada that the deed of trust was either made in contemplation of death, or was intended to take effect in possession or enjoyment at or after death within the meaning of the term "contemplation of death" as used in the act, which is defined by the act as follows:

"The words 'contemplation of death' as used in this act shall be taken to include that expectancy of death

which actuates the mind of a person on the execution of his will, and in no wise shall said words be limited and restricted to that expectancy of death which actuates the mind of a person in making a gift causa mortis. * * *" Section 30.

Counsel for appellants in reply to this position state in their brief:

"It is not necessary for us to discuss these questions, because for the purpose of this appeal only we are willing to concede that, if this act had been in force at the time of this transfer, the same might be held to be made in contemplation of death, or not intended to take effect in possession or enjoyment at or after death within the meaning of the statute. Section 1. We do this because we have entire confidence in the position which we take in the case, viz, that whether in fact made in contemplation of death, or in law or in fact intended to take effect in possession or enjoyment after death so far as the beneficiaries other than Henry Miller are concerned, the transfer at its date created vested interests to which the act was not intended to apply, and to which it could not constitutionally apply."

If we clearly interpret counsel's admission, the questions to be determined are narrowed down to three propositions: Did the deed of trust create a vested estate? Does the act apply to transfers made before it became effective? Can the act constitutionally be made to apply to such a transfer? Reading the opinion of the trial court in connection with its findings and conclusions, we take it that the last question is eliminated from the case. The district court in its opinion states:

"It will be noted that the statute went into effect April 25, 1913, and is not by its express terms made retroactive. Hence it must be construed as having only a prospective operation, as no intent to make the same operate retrospectively may be inferred from the words therein employed; therefore, if the interests in the property mentioned in the deed passed to and vested absolutely in the beneficiaries therein named upon the date

of the execution and delivery of the deed and independently of the death of Henry Miller, no tax may lawfully be imposed thereon."

1-7. In this situation the vital point raised is: Did the deed of trust as of its date create a vested estate so as to exempt the transfer from the operation of the statute? The execution of the will, the deed, and the transfer of the stock was one transaction. To determine whether the indenture mediately vested the legal title to the stock so as to exempt the transfer from a transfer tax under the statute, the instruments must be construed together as a single instrument. In Re Brandreth, 58 App. Div. 575, 69 N. Y. Supp. 142; State v. Pabst, 139 Wis. 561, 121 N. W. 360. While it is true that the nominal sum of $10 is named as the consideration of the deed, we do not apprehend that it would be contended that the deed was intended to be anything more than a voluntary deed of gift to those whom the deceased regarded as the natural and worthy objects of his bounty. Considering the deed and will simultaneously executed, the physical condition of the deceased at the time, and the facts and circumstances attending and leading up to the execution of the indenture and transfer of the stock, as well as the language employed in the deed, construed in connection with that employed in the will, indicates that deceased disposed of his property to take effect in possession or enjoyment at or after his death. From the evidence, the impression is irresistible that the deed of trust was an afterthought to avoid, if possible, an expected increase in the inheritance-tax rate in California, and a probable inheritance tax of the federal government. Clearly the deceased was advised of these possibilities prior to the execution of the deed. This materially affects the weight of the deed as evidence in a case seeking to impose upon the transfer a transfer tax in this or any other court. The deceased, after the execution of the instruments and delivery of the deed, was advised that however much he desired to change any legacy provided for therein he could not do

so, because no power of revocation had been reserved in the deed. This tends to indicate that the deceased in the first instance did not regard the indenture as irrevocable. We do not doubt the sincerity of the advice, but we are unable to perceive why the principle of law involved should be arbitrarily applied to the facts of this case, particularly in view of the expressed limitation in the deed that, upon and after the death of the grantor, the trustees shall take and hold all of said property. The paper clearly contemplates posthumous operation. It is only in cases where other parties besides the person creating the trust have an interest therein that the trust becomes irrevocable.

We see nothing in the deed that could have prevented the deceased from revoking the trust had he desired so to do. No beneficiaries or third party, as far as the record shows, had any present interest in the property to prevent the deceased, if necessary to do so, from invoking a court of equity to revoke the trust. The appellants and other appointees under the will had no such interest, because the deceased could have revoked his will and made another in favor of other parties. His beneficiaries in the indenture had no such interest, because the deceased had power by will to secure the property to others, and entirely exclude them from all interest therein. In Re Ogsbury's Estate, 7 App. Div. 71, 39 N. Y. Supp. 981. It is clear from both instruments that the trustees were not empowered to transfer any interest or pay any legacy created by either instrument until the death of the grantor. The property was to all intents and purposes that of Henry Miller, subject to the disposition made of it by his will published and declared simultaneously with the deed. No reason is suggested why Miller should conclude himself from the right of disposing of his property by will, or that the deed should be construed as nullifying his will. We do not say that it is necessary to the validity of a deed that it should convey an estate in immediate possession, but it is necessary that it should take effect in interest upon

its execution, though the right of possession or enjoyment may not take place until the happening of a certain event. Wall v. Wall, 30 Miss. 91, 64 Am. Dec. 152. If, however, the interests created do not arise until the death of the donor, or some other future time, the instrument cannot be a deed, although it may be so denominated by the maker, may have express words of immediate grant, may have sufficient consideration to support a grant, and may be formally delivered. Babb v. Harrison, 9 Rich. Eq. (S. C.) 111, 70 Am. Dec. 204. We do not deny that the donor may convey an interest, reserving a lifetime estate to himself; but a deed, if made with a view of the disposition of a man's estate after his death, inures in law as a devise or will. Wellborn v. Weaver, 17 Ga. 267, 63 Am. Dec. 242.

We are clearly of the opinion, construing the instruments together and in connection with other evidence, that the district court correctly found that Henry Miller did not divest himself of, or relinquish control over, the interests of the beneficiaries named in the instruments, and it was not until the death of Miller that the transfer in any respect became absolute and that the beneficiaries became irrevocably entitled to the various sums mentioned in the deed after the death of Miller.

8. There is no natural right to create artificial and technical estates with limitations over, nor has the remainderman any more right to succeed to the possession of property under such deeds than legatees or devisees under a will. The privilege of acquiring property by such an instrument is as much dependent upon the law as that of acquiring property by inheritance. Keeney v. N. Y., 221 U. S. 534, 32 Sup. Ct. 105, 56 L. Ed. 304, 38 L. R. A. (N.S.) 1139.

9-11. The statute in question taxes the passing of property, or any interest therein, in the possession, enjoyment, present or future, by inheritance, descent, devise, succession, bequest, grant, deed, bargain, sale, gift, or appointment. Stats. 1913, sec. 31, p. 422. This statute, taken as a whole, goes further than that of New

York, and the fine distinctions made in the briefs of cases in that and other jurisdictions tend rather to confuse than aid the court in construing a local statute. The statute in terms taxes gratuitous acquisitions of property under trust conveyances intended to take effect in possession or enjoyment at or after death. But however broad and comprehensive its terms, the statute was not intended to restrain persons in their right to transfer property in all legitimate ways. It is the policy of the law to encourage making conveyances in fee, and it is as lawful to create an estate for life with remainder after death of the grantor as it is to convey in fee; but there is a marked difference in "taxing a right and taxing a privilege." By the statute the favorite transfer in fee is not taxed with the privilege. The tax is not a property tax, but is in the nature of an excise tax, to wit, on the transfer of property. In Re Williams, 40 Nev. 241, 161 Pac. 741, L. R. A. 1917c, 602. The language of the statute manifests its purpose to tax all transfers which are accomplished by will, the intestate laws, and those made prior to death which can be classed as similar in nature and effect, because they accomplish a transfer of property under circumstances which impress on it the characteristics of a devolution made at the time of the donor's death. State v. Pabst, supra.

But it is earnestly insisted that, as the transfer of the property was made before the act became effective, no tax accrued. This leads to the discussion of the question: When does a transfer tax as imposed by the statute accrue? To this there can be but one answer—at the death.

Says Chief Justice White, in Knowlton v. Moore, 178 U. S. 56, 20 Sup. Ct. 753, 44 L. Ed. 976:

"* * * Tax laws of this nature in all countries rest in their essence upon the principle that death is the generating source from which the particular taxing power takes its being, and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested."

12, 13. From this we conclude that the statute taxes, not the interest to which some person succeeds on a death, but the interest which ceased by reason of the death. Knowlton v. Moore, supra; Hansen's Death Duties, p. 63. Had Henry Miller died testate or intestate between the enactment and taking effect of the act, no tax would accrue; but the weakness of the appellants' position in this connection is that the property did not vest until after the statute became effective. The actual possession or enjoyment by those entitled to Miller's bounty under the will and deed was postponed to take effect at or after his death. Conceding that the law did not become effective until thirty days after its enactment, we are of the opinion that in this, as in other cases, the legislature deemed it best to give notice to the public of its provisions for this period of time before it became effective, and the interval of time was not intended to afford ingenious minds an opportunity to devise schemes to defeat the purpose of the act. The rights and obligations of all parties in regard to the payment of an inheritance tax are determinable as of the time of the death of the decedent (English v. Crenshaw, 120 Tenn. 531, 110 S. W. 210, 17 L. R. A (N.S.) 753, 127 Am. St. Rep. 1053) ; and, as we conclude that the property in question did not vest at the date of the transfer, it follows that the transfer is subject to the tax under the statute in question.

The judgment is affirmed.

COLEMAN, C. J., dissenting:

I dissent from the opinion filed in this case by my learned associates. That opinion is made to turn upon the conclusion that the title to the property in question did not vest in the trustees at the time of the execution and delivery of the trust agreement, but that it vested upon the death of the settlor. That was the very theory upon which the trial court rendered its judgment. If that conclusion is sound, it must necessarily follow that the tax is due and collectible.

Whatever might be my view as to a transaction, such as appears from the record in this case, had it taken place in this state, I think that, in view of the fact that it took place in California, where all of the parties reside, where the property was situated, and where the declaration of trust was executed and delivered, the question as to whether or not the title to the property vested at the time of the execution and delivery of the trust agreement is controlled by the law of California. The supreme court of that state, in Nichols v. Emery et al., 109 Cal. 323, 41 Pac. 1089, 50 Am. St. Rep. 43, laid down the rule which I think is binding upon the court in the case at bar upon the point in question. In that case the settlor reserved the right to revoke the trust, but died without exercising the right. The court said:

"It is undoubtedly the general rule enunciated by the leading case of Habergham v. Vincent, 2 Ves. Jr. 231, and oft repeated, that the true test of the character of an instrument is, not the testator's realization that it is a will, but his intention to create a revocable disposition of his property to accrue and take effect only upon his death and passing no present interest. The essential characteristic of an instrument testamentary in its nature is that it operates only upon, and by reason of, the death of the maker. Up to that time it is ambulatory. By its execution the maker has parted with no rights and divested himself of no modicum of his estate, and per contra no rights have accrued to and no estate has vested in any other person. The death of the maker establishes for the first time the character of the instrument. It at once ceases to be ambulatory. It acquires a fixed status and operates as a conveyance of title. Its admission to probate is merely a judicial declaration of that status. Upon the other hand, to the creation of a valid express trust it is essential that some estate or interest should be conveyed to the trustee; and, when the instrument creating the trust is other than a will, that estate or interest must pass immediately. Perry, Trusts, sec. 92. By such a trust, therefore, something

Coleman, C. J., dissenting

of the settlor's estate has passed from him and into the trustee for the benefit of the cestui, and this transfer of interest is a present one, and in no wise dependent upon the settlor's death. But it is important to note the distinction between the interest transferred and the enjoyment of that interest. The enjoyment of the cestui may be made to commence in the future and to depend for its commencement upon the termination of an existing life or lives or an intermediate estate. Civ. Code, sec. 707. Did the grantor in the present case divest himself, by the instrument, of any part of the estate in the land which he had formerly owned and enjoyed? By the terms of the instrument, an estate was assuredly conveyed to the trustee. The language is appropriate to a conveyance, and the grantor's execution and delivery of the deed (both found), he being under no difficulty, and impelled by no fraud, operated to vest so much of his estate in the trustee as was necessary to carry out the purpose of the trust. The especial purpose was to sell and distribute the proceeds upon his death—a legal purpose, authorized by section 857 of the civil code. The term of the duration of the trust—the life of the settlor—did not violate the provisions of section 715 of the same code.

"We have, therefore, an estate conveyed to a named trustee, for named beneficiaries, for a legal purpose and a legal term—such a trust as conforms, in all its essentials, to the statutory requirements. That no disposition is made by the trust of the interest and estate intervening in time and enjoyment between the dates of the deed and the death of the settlor cannot affect the trust. The trustee takes the whole estate necessary for the purposes of the trust. All else remains in the grantor. Civ. Code, sec. 866. In this case there remained in the grantor the equivalent of a life estate during his own life, and he was thus entitled to remain in possession of the land, or lease it and retain the profits. Nor did the fact that the settlor reserved the power to revoke the trust operate to destroy it or change its character. He

had the right to make the reservation. Civ. Code, sec. 2280. But the trust remained operative and absolute until the right was exercised in proper mode. Stone v. Hackett, 12 Gray (Mass.) 232; Van Cott v. Prentice, 104 N. Y. 45, 10 N. E. 257. Indeed, this power of revocation was strongly favored in the case of voluntary settlements at common law, and such a trust, without such a reservation, was open to suspicion of undue advantage taken of the settlor. Lewin on Trusts, 75, 76; Perry on Trusts, sec. 104. We think, however, that the circumstances of the reservation of power to revoke, and the limitation of the trust upon the life of the settlor, have operated to mislead the learned judge of the trial court. If the life selected had been that of a third person, and if no revocatory power had been reserved, no one would question but that a valid express trust had been created. But the fact that the designated life in being was the settlor's could not operate to destroy its validity, for he had the right to select the life of any person as the measure of duration. And the fact that he reserved the right to revoke did not impair the trust, nor affect its character, since title and interest vested subject to divestiture only by revocation, and, if no revocation was made, they became absolute. A man may desire to make disposition of his property in his lifetime to avoid administration of his estate after death. Indeed, in view of the fact, both patent and painful, that the fiercest and most expensive litigation, engendering the bitterest feelings, springs up over wills, such a desire is not unnatural. And when it is given legal expression, as by gifts absolute during life, * * * or voluntary settlements, there is manifest, not only an absence of testamentary intent, but an absolute hostility to such intent."

Other California cases sustaining the decision quoted are: Tennant v. Tennant Memorial Home, 167 Cal. 570, 140 Pac. 242, and Gray v. Union Trust Co., 171 Cal. 637, 154 Pac. 306.

Do the circumstances of the case, particularly the

making of the will by Miller, show that it was not the intention that the trust agreement should operate to vest title to the stock except upon the death of Miller? In considering this question, it becomes necessary to call attention to Matter of the Estate of Stanford, 126 Cal. 122, 58 Pac. 465, 45 L. R. A. 788, another California case, in which it is said:

"An estate is vested when there is an immediate right of present enjoyment or a * * * fixed right of future enjoyment."

With the rule laid down in the language just quoted, and that declared in Nichols v. Emery, supra, in mind, it is necessary to inquire if, at the time of the execution and delivery of the declaration of trust and the transfer of the stock certificates, an estate so vested that the beneficiaries acquired a "fixed right of future enjoyment." If they did acquire such a fixed right of future enjoyment, then the contention of the state cannot be sustained. If the theory of the state is sound, Miller could, by a will executed subsequent to the trust agreement, have revoked the declaration of trust. Suppose he had tried to do that very thing, and pursuant to such will the trustees had repudiated the trust agreement, in what court would the beneficiaries have brought suit to compel the performance of the trust? Certainly no other courts would have had jurisdiction than the courts of California, and they would be bound by the decisions from that state, to which I have alluded. Would the court of that state say that under the circumstances leading up to the execution of the trust, and contemporaneous with it, no estate was so vested under the trust as to establish a fixed right of future enjoyment in the beneficiaries named? The only circumstances connected with the entire transaction which throw any light upon it are the physical condition of Miller at and shortly prior to the time of executing the trust and the execution of the will simultaneously with the execution of the trust. Just how the fact that Miller was in poor health can aid the court, in determining whether or not he

intended that a fixed right of future enjoyment should vest under the trust, is more than I am able to see; but, if it can, there is nothing in it which justifies the conclusion that he did not so intend. If a fixed right of future enjoyment vested under the terms of the declaration of trust, such right was not, and could not have been, divested by the will.

It seems to me that the strongest circumstance surrounding the entire transaction, throwing light upon the character of the declaration of trust, is the indorsing and delivering of the stock certificates by Miller at the time of executing and delivering the declaration of trust. By that act he completely surrendered control, for all time, of the property in question; for, not having reserved the right to revoke the trust, such revocation was impossible, as shown in the case of Nichols v. Emery, supra, which rule is sustained by the overwhelming weight of authority. See 1 Perry on Trusts (6th ed.) sec. 104; 39 Cyc. 92. But the majority opinion states that the deceased (Miller) "disposed of his property to take effect in possession or enjoyment at or after his death." From this statement it seems that the court concluded that Miller did that which was held in Re Stanford's Estate, supra, to be sufficient to create a fixed right of future enjoyment.

If Miller "disposed" of the property, the title must have vested, in which case there was a fixed right of future enjoyment at the time of the execution of the trust agreement, which was prior to the time the inheritance-tax law of Nevada went into effect, and hence no inheritance tax is collectible, unless the act operates retrospectively. The learned trial judge held that the act does not operate retrospectively, in which, I think, he was clearly right; for it would seem absurd to say that such could have been the intention, when in express terms the act was made to go into effect thirty days after approval; besides, there is absolutely nothing to indicate that it was the intention that the act should so operate, and it is a well-known rule of law that—

"All statutes are to be construed as having only a prospective operation, unless the purpose and intention of the legislature to give them a retrospective effect is expressly declared, or is necessarily implied from the language used. In every case of doubt, the doubt must be solved against the retrospective effect." 36 Cyc. pp. 1205–1208.

See, also, Milliken v. Sloat, 1 Nev. 577; Hunter v. Savage, etc., 4 Nev. 154; State v. Manhattan S. M. Co., 4 Nev. 333; State v. Manhattan V. Co., 32 Nev. 474, 109 Pac. 442; State v. Eggers, 33 Nev. 535, 112 Pac. 699; Chew Heong v. U. S., 112 U. S. 536, 5 Sup. Ct. 255, 25 L. Ed. 770; Winfree v. N. P. R. Co., 227 U. S. 301, 33 Sup. Ct. 273, 57 L. Ed. 518.

However, I do not understand that the learned attorney-general questions the correctness of the rule invoked, but he insists that the provision in the inheritance-tax law which provides that when property shall pass without valuable consideration, and "in contemplation of the death of the grantor * * * or intended to take effect in possession or enjoyment at or after such death," it shall be liable to the tax, subjects the property rights in question to the terms of the inheritance-tax law. To sustain this view, reliance is had upon the following authorities: In Re Masury's Estate, 28 App. Div. 580, 51 N. Y. Supp. 331; In Re Ogsbury's Estate, 7 App. Div. 71, 39 N. Y. Supp. 978; In Re Barbey's Estate, 114 N. Y. Supp. 725; In Re Patterson's Estate, 127 N. Y. Supp. 284; In Re Seaman's Estate, 147 N. Y. 69, 41 N. E. 401; In Re Green's Estate, 153 N. Y. 223, 47 N. E. 292; In Re Bostwick's Estate, 160 N. Y. 489, 55 N. E. 208; In Re Brandreth's Estate, 169 N. Y. 437, 62 N. E. 563, 58 L. R. A. 148; In Re Douglas Co., 84 Neb. 506, 121 N. W. 593; Appeal of Seibert, 110 Pa. 329, 1 Atl. 346; In Re Maris's Estate, 14 Pac. Co. Ct. R. 171, 3 Pa. Dist. R. 38; Crocker v. Shaw, 174 Mass. 266, 54 N. E. 549; New England Trust Co. v. Abbott, 205 Mass. 279, 91 N. E. 379, 137 Am. St. Rep. 437; State v. Bullen, 143 Wis. 512, 128 N. W. 109.

In the first case mentioned (In Re Masury's Estate, 28 App. Div. 580, 51 N. Y. Supp. 331), the deed was executed in 1890, but the inheritance-tax law had been in effect since 1885. The question involved in this case was not presented to the court in that case.

In the Matter of Ogsbury's Estate, 7 App. Div. 71, 39 N. Y. Supp. 978, it appears that the transfer was made to the trustees upon the condition that they should, upon the death of the grantor, transfer and convey the property to such person or persons as the grantor should direct in his will. There is no similarity between that case and the one at bar.

The Matter of Barbey's Estate, 114 N. Y. Supp. 725, was decided in 1908, twenty-three years after an inheritance-tax law had been enacted, and it does not appear that the transfer was made before the act became operative, but it does appear that the sole ground upon which the opinion was based was the fact that the grantor reserved to himself the right of ownership in the trust property until his death. The case is not in point.

In Re Patterson's Estate, 127 N. Y. Supp. 284, is one in which the trust law was enacted after the inheritance act had gone into effect. It is not an authority on the point in question.

In the Matter of Douglas County, 84 Neb. 506, 121 N. W. 593, the inheritance law took effect July 1, 1901, and the trust was created in 1904. Hence the question here involved was not presented.

It appears in Re Maris's Estate, 14 Pa. Co. Ct. 171, 3 Pa. Dist. R. 38, that the inheritance law was passed in 1887, and that the deed was made in 1891. The question here presented was not involved.

In the Matter of Green's Estate, 153 N. Y. 223, 47 N. E. 292, the trust was created in 1889, four years after the inheritance-tax law had taken effect. It is no authority upon the point involved.

In the Matter of Bostwick's Estate, 160 N. Y. 489, 55 N. E. 208, in the Matter of Brandreth, in the Matter

of the Appeal of Seibert, and in Crocker v. Shaw, the trusts were created after the inheritance-tax act had taken effect.

In the case of State v. Bullen, 143 Wis. 512, 128 N. W. 109, the point insisted on in this case was not considered. Furthermore, the court says in its opinion:

"As we have seen, Mr. Bullen reserved the right to direct and control the distribution of the trust property and to revoke the trust at any time during his life."

The opinion in that case is not authority upon the point in question.

The case of New England Trust Co. v. Abbott is not in point. The court says:

"The only part of the property which was finally disposed of in a known and definitely stated way was the income for the period of five years. The disposition of the principal was left subject to contingencies, any one of three of which might terminate the trust and give direction to the payment of the principal."

Nothing became vested until the death of the creator of the trust, which was after the inheritance-tax law had gone into effect. I am unable to see in what way this case sustains the contention of counsel.

As to the case of In Re Seaman's Estate, which it is contended sustains the contention of the state, it may be said that, while it is possible that different deductions may be drawn as to what was really decided, nevertheless the opinion in that case has been interpreted by the New York courts, where a different view from that contended for by the attorney-general is maintained.

In the Matter of Craig's Estate, 97 App. Div. 289, 89 N. Y. Supp. 971, it was held that an act imposing an inheritance tax would not affect an estate which had vested before the act went into effect. In that case the Seaman case was interpreted, and the court said:

"It is true that something is said (in the Seaman case) which may seem to be in conflict with the view I am taking, but I am sure there is nothing in the actual decision to that effect."

This opinion was affirmed by the Court of Appeals of New York in 181 N. Y. 551, 74 N. E. 1116, without comment, thereby approving all that had been said by the lower court. But whatever may be said of the Seaman case, or of the Craig case, the Court of Appeals in Re Pell, 171 N. Y. 48, 63 N. E. 789, 57 L. R. A. 540, 89 Am. St. Rep. 791, held that when an estate accrued before the passage of an amendment providing for a tax, but coming into actual possession after the amendment, the amendment was void. So far as I have been able to learn, there has been no decision holding squarely to the contrary, unless it be the case of People v. Carpenter, 264 Ill. 400, 106 N. E. 302. But the force of the Carpenter case is entirely lost, in view of the fact that the conclusion therein reached is based upon the court's interpretation of In Re Seaman, supra, since the New York court from which the Seaman case emanated has put the interpretation upon the case which I contend for.

But counsel for respondent seek to distinguish the Craig case, supra, from the case at bar. They say the deed in that case was made in contemplation of marriage and not of death, and was designed to make an effective provision in præsenti for the prospective wife and the possible offspring. It is true, as claimed by counsel, that the trust in that case was created in contemplation of marriage, but that was not made the turning-point in the decision. The court in that case says:

"The point presented by the appeal is that the right as a property right to take the gifts when the time for possession and beneficial enjoyment should ultimately arrive had fully accrued at the date of the marriage and the birth of the children free from any existing tax upon the transfer either made or contemplated, and that subsequent legislation imposing such a tax must be deemed unconstitutional, as, in effect, the taking of private property for public use without compensation, or as impairing the obligation of a contract. In other words, the appellants contend that at least as early as May 9,

1885, they had acquired their rights by irrevocable deed; that such rights, whether vested or contingent, then constituted present property interests in future estates, which were vested in the sense that they were secured to them by deed, subject only to contingencies as to time and survivorship; that incident to the ownership of such property was the absolute right to its acquisition in possession and enjoyment at the stipulated time; and that such ultimate right of possession and enjoyment, being absolute, and not merely privileged, could not afterwards be taxed by the state, because of well-settled principles of constitutional law."

The point involved in that case is the identical point point in question here, namely, whether the accrual of the "right as a property right to take the gifts when the time for the possession and beneficial enjoyment should ultimately arrive had fully accrued at the date" of the creation of the trust, or whether it accrued upon the death of the donor. The court held that the right fully accrued under the trust at the time of the consummation of the marriage. In the case at bar the rights of the beneficiaries under the trust, as prospective rights to take the gifts when the time for the possession and beneficial enjoyment should ultimately arrive, accrued at the date of the creation of the trust. They were rights which the settlor could not revoke or defeat, and hence the law which thereafter went into effect providing for an inheritance tax did not apply.

In the case of Hunt v. Wicht, 174 Cal. 205, 162 Pac. 639 L. R. A. 1917C, 961, wherein it appears that William Garms executed a deed of conveyonce to Ulrice Garms, conveying certain property, and deposited it in escrow, to be delivered upon his death, the deed was placed in escrow before his death and before the inheritance-tax act was passed. But William Garms died after the act had become a law, whereupon the deed was delivered to the grantee. It was sought to recover an inheritance tax, upon the theory that the conveyance was a transfer by deed "made without valuable and adequate considera-

tion, in contemplation of the death  *  *  *  or intended to take effect in possession or enjoyment at or after such death"; it being contended that the grantee in the deed took pursuant to the terms of the inheritance-tax law, which provided for the levying of a tax where the party taking "becomes beneficially entitled in possession or expectancy to any property or the income therefrom, by any such transfer, whether made before or after the passage of this act."

The court held that the tax could not be collected, and said:

"We have then the case of a grant of land so executed and delivered on April 12, 1905, as to be fully operative and effective on that date to vest a present title in the grantee, subject only to a life interest in the grantor; 'an executed conveyance' (Estate of Cornelius, supra) of this property in fee simple absolute, subject only to this life interest. Could the legislature subsequently lawfully impose a succession tax upon this fully executed transfer of title, such tax accruing at the termination of the grantor's reserved life estate, simply because in the meantime the grantee was debarred by the intervening life estate from actual possession of the property conveyed and the other incidents of a life estate? It appears to us that to state the question is to answer it. The succession to the property by the grantee which is the thing attempted to be taxed was complete upon the delivery of the deed in escrow, notwithstanding the reservation of the life estate. The whole estate conveyed vested irrevocably in interest at once, notwithstanding that actual possession of the property itself and enjoyment of the profits thereof were deferred until the death of the life tenant. His death added nothing to the title theretofore acquired by the grantee, and there was no transfer of any property in any legal sense at the time of such death, or at any time subsequent to the delivery in escrow. The right of the grantee to have actual physical possession of the property itself, and enjoyment of the other incidents of an estate for life upon the death

of the life tenant was absolutely vested by the delivery of the deed in escrow, and nondefeasible, and the legislature could not thereafter lawfully destroy, impair, or burden this property right under the guise of a succession tax on account of the transfer. As said in Matter of Craig, 97 App. Div. 289, 89 N. Y. Supp. 971, affirmed 181 N. Y. 551, 74 N. E. 1116:

" 'The underlying principle which supports the tax is that such right (the right of succession) is not a natural one, but is in fact a privilege only, and that the authority conferring the privilege may impose conditions upon its exercise. But when the privilege has ripened into a right it is too late to impose conditions of the character in question, and when the right is conferred by a lawfully executed grant or contract it is property and not a privilege; and as such is protected from legislative encroachment by constitutional guarantees.'

"It is the vesting in interest that constitutes the succession, and the question of liability to such a tax must be determined by the law in force at that time. This view is not opposed to Estate of Woodard, 153 Cal. 39, 94 Pac. 242, cited by appellant, where the statute in force at the time of death of a testator was held applicable, rather than a later act, simply because it was at the time of such death that the estate vested in the devisee and legatee. What we have said appears perfectly clear on principle, and is sustained by practically all of the authorities in other states where the question has arisen. In New York the matter is thoroughly settled by several decisions. In the Matter of Pell, 171 N. Y. 48, 55, 63 N. E. 789, 791 (57 L. R. A. 540, 89 Am. St. Rep. 791), it is said that such a transfer tax being one not imposed on property, but upon the right to succession, it 'follows that, where there was a complete vesting of a residuary estate before the enactment of the transfer-tax statute, it cannot be reached by that form of taxation,' and also, 'if these estates in remainder were vested prior to the enactment of the transfer-tax act, there could be in no legal sense a transfer of the

property at the time of possession and enjoyment. This being so, to impose a tax based on the succession would be to diminish the value of these vested estates, to impair the obligation of a contract, and take private property for public use without compensation.' "

It is my opinion that it was not the intention of the legislature that the inheritance-tax act should apply to such a case as the one at bar; and, furthermore, that if such was the intention, so much of the act as so provides is unconstitutional, null, and void.

## ON REHEARING

By the Court, SANDERS, J.:

The above-entitled causes were briefed, argued, submitted, and considered as one case. Because of a change in the personnel of the court it became necessary to resubmit the causes, in order to dispose of the petition for rehearing, and to finally determine the case of Nickel et al. v. State of Nevada; it appearing that the latter case remains undetermined.

No better way is suggested for assisting the court in searching for error, where a rehearing is granted, than to carefully consider a well-directed criticism of the opinion upon which its conclusion is based. In this instance counsel for the losing parties in polite terms insist that the opinion of the majority is in conflict with the well-established principles of comity of decisions between states, and that the opinion is contrary to private international law. The argument, coming as it does from such an eminent source, is worthy of some further consideration.

1. Every owner of property has the inherent right to dispose of his property in such form, such manner, and for such purposes as he may see fit; but where the devolution of title involves a succession or an inheritance tax, it is governed and controlled by the law of the forum, imposing the tax if the transfer sought to be taxed is within the jurisdiction of its tax authorities. The difficulty with the application of counsel's rule of

comity is that there is no foreign element in this litigation, other than it happens that the transfer in question was made, and the parties thereto and the property affected thereby were located, in our sister state of California. The property affected by the alleged transfer consists of 119,871.75 shares of the capital stock of a Nevada corporation. These shares of stock are primarily under the protection of the laws of Nevada, and the complete devolution of the title thereto ordinarily takes place according to the laws of Nevada. In Re Douglas County, 84 Neb. 506, 121 N. W. 596. But, aside from this, it must be conceded that, by the express terms of the Nevada inheritance-tax law, to the extent that the said shares of stock represented the property owned by Henry Miller, deceased, situated in Nevada, it is taxable. Section 1, Statutes of Nevada, 1913, p. 141. What, then, becomes of the rule of comity? Can it be employed to pervert the statute law of a sovereign state? We do not think so. "Few general principles of private international law," says Mr. Minor in his valuable work on Conflict of Laws, sec. 6, "are so well settled as the rule that no foreign law (even though, under ordinary circumstances, it be the 'proper law') will be enforced in a sovereign state, if to enforce it will contravene the express statute law or an established policy of the forum, or is injurious to its interests." "If the policy of the forum," says the author, "has been expressed in a statute which in terms covers even transactions having a foreign element, no difficulty will be apt to arise."

The legislature of this state has spoken. There can be no question as to its pronounced policy to cover by its inheritance-tax law such foreign transactions as are disclosed by this record, and we decline to look to a foreign jurisdiction for an authority either to uphold the law or to evade its provisions. We are not concerned in the lex loci contractus, if the transfer or devolution of title to the property in question is taxable under our laws.

We do not concede that the opinion of the majority

does violence to the rule of comity of decisions between states, in that it conflicts with the opinion of the Supreme Court of California in the case of Nickel et al. v. State of California, 175 Pac. 641. It is true the court held the complaint in that case was good as against the demurrer, but it is inferable from the order and what is said by the court in its opinion that it would be entirely proper and permissible for the State of California, upon issue joined, to show as a matter of fact that the instrument (being the same as that involved in both of these cases) was made "in contemplation of death" and was not made for a "valuable and adequate consideration," and liable to a tax under the statute of California. Stats. 1911, p. 713, sec. 1, subd. 3. In view of the findings of the lower court in the case at bar, and the present status of the case of Nickel et al. v. State of California, it is strange that counsel for appellants should cite this as an authority for the proposition that the conveyance in question is not taxable.

Our attention has not been directed to any decision of our sister state, or that of any other jurisdiction, that goes to the extent of holding that it is not permissible, for the purpose of claiming an inheritance tax, to attack a transfer and show by extrinsic proof that an instrument of conveyance is subject to the lien of such a tax. If such be the law, estates in many cases would pass free from tax. The method usually adopted for the avoidance of such a tax is that pursued in this case. In Re Keeney's Estate, 194 N. Y. 281, 87 N. E. 428.

2. But it is insisted that the trustees accepted the trust; that their active duties began immediately upon the delivery of the deed; that it contained no power of revocation, and under the statute of California it was irrevocable. Section 2280, C. C. Cal. Conceding this to be true as between the parties to the transaction, the weakness of the position is that the test in determining whether, under a deed, grant, or gift, the property was intended not to vest in possession or enjoyment until after the death of the grantor, does not depend upon

whether a power to revoke has or has not been inserted, but upon whether or not the property passes with all the attributes of ownership, independently of the death of the transferor. State St. Trust Co. v. Treasurer and Receiver-General, 209 Mass. 373, 95 N. E. 851.

The learned trial judge in these cases, and the inheritance-tax appraiser of California in the case of Nickel et al. v. State of California, supra, found upon identically the same state of facts that the transfer was made by the decedent, Miller, in contemplation of death, without adequate and valuable consideration, and the same was intended to take effect in possession and enjoyment as to the grantees and beneficiaries therein named, other than the deceased, at or after the death of said decedent. This being true, it is immaterial, in this case, that the deed was dated and executed before the inheritance-tax law of Nevada became effective. It is the vesting of the property in possession and the enjoyment of the same upon the death of the grantor, and after the statute took effect, that renders it liable to the tax; and both those things happened in this case. Crocker v. Shaw, 174 Mass. 266, 54 N. E. 549; In Re Green's Estate, 153 N. Y. 223, 47 N. E. 292; In Re Seaman's Estate, 147 N. Y. 69, 41 N. E. 401; Inheritance Tax (Gleason & Otis) 90, 91. It is this well-recognized principle that distinguishes the case at bar from that of Hunt v. Wicht, 174 Cal. 205, 162 Pac. 639, L. R. A. 1917c, 961.

In view of the above findings, it may have been unnecessary for the trial court to find, expressly, that the deed of trust "was made, executed, and delivered with the express intent on the part of Henry Miller, deceased, to evade the inheritance-tax law of this state," and to find "that said deed of trust is testamentary in character." We concede that if, upon any reasonable hypothesis, we could bring ourselves to the conclusion that as a matter of law the title to the specific shares of stock vested absolutely in the trustees before the act became effective, the motive of the grantor for making the deed

would be immaterial; but where it is a question of fact, to be determined by the trial court from the nature and character of the conveyance, and from all the circumstances surrounding its execution, whether the property passed, the motive and the intent of the grantor and the bona fides of the transaction are material elements to be considered in determining whether the transfer is taxable.

We have carefully reviewed the evidence and given the exhaustive briefs our earnest consideration. Our conclusion is that the judgment in the above-entitled causes must be affirmed.

COLEMAN, C. J., dissenting:

I dissent, for the reasons given in my opinion filed when the case was originally before us.

[NOTE—On writ of error to United States Supreme Court.]